Catron, Ch. J.
delivered the opinion of the court.
This is a writ of error from the chancery court held at Franklin. On the 8th of October, 1823, Napier filed *109 his bill against Elam, Erwin and others, to foreclose a mortgage on the Beil lavern property in JN asimile, purchased from Erwin by Elam and Pryor in 1818, on which they had given a mortgage for the purchase money, payable in five instalments. The two first, (due 4th September, 1820, and 4th September, 1821,) were assigned to the Morgans, and a principal question is, whether before or after due. The bill does not allege when they were assigned, but alleges they were executed in part consideration of the purchase money of the property, and the notes were assigned to Napier, the Morgans, and the Union Bank of Maryland, for a valuable consideration; and that on the 23d day of August, 1823, the mortgage was also assigned to complainant, the Morgans, and the bank.
The Morgans answer, said notes were executed, and that the mortgage was executed to secure their payment as set forth in the bill; that two of the notes were assigned to them as alleged, and that the mortgage had also been assigned as alleged.
Elam answers, and admits the purchase from Erwin at the price of $30,000; admits the execution of the notes .and mortgage to Erwin; whether assigned, or when, Elam does not answer. He alleges that Erwin had purchased from Graham, who had purchased from William Eastin; that Eastin had purchased from Thomas A. Claiborne, and, to secure the purchase money, had given a deed of trust vesting the property in William T. Lewis and Thomas Crutcher as trustees, to sell, if the purchase money was not paid, which was for the' use of the children of Claiborne, and which deed of trust had been executed and registered in the year 1810; that the deed of trust was for a large amount, and a bill was then pending in the same court to enforce the deed of trust to the destruction of Elam’s title, of which‘deed he was ignorant when he purchased. To the bill of the trustee, Crutcher, and the deed of trust, he refers.
*110 On the 3d of November, 1825, Elam filed his cross . . , , P bill against all the foregoing parties, to set the sale ot 1818 aside, by reason of the existence of the trust deed to Crutcher and Lewis. He alleges the execution of the notes and mortgage; that he knew nothing of any encumbrance, and was imposed upon; that he could neither sell, improve, or rent the property to advantage. Elam’s bill alleges that the said Erwin combining, &c. with said Morgans, &c. to cheat and defraud your orator, has passed off the notes to the other defendants, in what proportions he cannot say, but is informed and believes all of the defendants set up some claim to said notes; prays them to answer particularly what interest they have, or what claim they set up to said notes, respectively, and prays the contract of 1818 to be cancelled.
Calvin Morgan answers for the firm. Admits the sale, but denies any knowledge of Erwin having committed any fraud on Elam and Pryor; knows nothing of the mortgage said to have been executed by Eastin in 1810; says it may be true there was such a mortgage, and that such a bill is pending. Admits two of the notes were transferred to the Morgans, but they were duly and fairly transferred for a full and valuable consideration before they became due, and without any knowledge or even suspicion that any fraud had been committed by said Erwin in obtaining them. At the same time the notes were assigned, the mortgage, taken by Erwin on the property from Elam and Pryor, was also assigned to the Morgans, and some other creditors, as he states, which assignment was for a fair and valuable consideration; and he insists, the contract cannot be cancelled as to the Morgans. The answer was replied to. After all the answers were in, and the original and cross causes set for hearing, they came on to be heard together in 1827. The decree states, that it appeared to the court, a material part of the premises mentioned in the bills at and before the sale to Elam and Pryor in 1818, was encumbered by a lien or *111 mortgage from Eastin to Crutcher for a large sum of mo-,1 , . , ° , , , ney; that that part by a former decree ol the court had been sold for the satisfaction of upwards of $10,000, and the title vested in William F. T. Claiborne in fee; that Elam and Pryor at the time of said purchase, were not informed of said mortgage.
It further appeared that two of the notes for six thousand dollars each, which fell due on the 4th of September, 1820, and on the 4th of September, 1821, for a valuable consideration had been transferred by Erwin to the Morgans.
On these facts the contract of Erwin with Elam and Pryor was cancelled, and the property ordered to be sold to pay the notes; and that Pryor and Elam be forever released and discharged from payment of any part of the notes not discharged by the sale of the property.
The property was sold, but did not discharge the whole amount of the notes, and this writ of error is prosecuted by the Morgans to reverse so much of the decree as releases Elam and Pryor from the.payment of the balance of the purchase money.
On this writ of error we must proceed upon the pleadings and decree. By the English authorities, on the face of the decree alone, can a reversal take place on a review. 1 Har. Ch. Pr. 141. But our rule of court makes the pleadings part of the decree. Rule 75. The facts appearing by the pleadings and decree must be taken as true, and these causes as one proceeding. 1 Har. Ch. 135.
To Elam’s bill the Morgans plead, that they had endorsed to them the notes before due, and without any notice of the equity alleged by Elam, and for a full and fair consideration.
Napier’s bill states, “and your orator alleges that said Erwin, by his writing under his hand, dated the 23d of August, 1823, has assigned, transferred and conveyed to your orator, the said Calvin, G, and R. Morgan, and the
*112 Union Bank of Maryland, all his right to the mortgaged premises in proportion to their respective claims.”
To this the Morgans answer, that it is true that said Andrew Erwin has assigned said mortgage to complainant, and to these defendants, and to the Union Bank of Maryland/as set forth in the bill.
In the answer to Elam’s cross bill, Calvin Morgan, the partner who answers, after speaking of the notes and their assignment, for a valuable consideration, before due, and without notice, says, “At the same time that these notes were assigned to respondent, G. and R. Morgan, the mortgage taken by said Erwin on the property was also assigned to respondent, G. and It. Morgan, and some other creditors of said Erwin.” The first answer was made in February, 1824, and that to the cross bill in December 1825. In the first answer it is admitted that the mortgage was assigned by Erwin, 23d August, 1S23; and the second answer states with much precision, that the notes and the mortgage were assigned at the same time. This was long after both notes were due to the Morgans; the first fell due 4th September, 1820, and the second 4th September, 1821.
It is insisted this is not true in point of fact. In answer, the court can only say it must abide by the record; that neither the mortgage given by Eastin, that given by Elam and Pryor, the notes and endorsements thereon, or the assignment of the mortgage by Erwin, are in the record.
The next question is, did it lie upon the Morgans to prove that they purchased the notes for a fair price, and before they were due ? These bills were filed long after all the notes were due, and when the presumption of fact concurred with the presumption of law, that they were subject to the equities in the hands of the holders that they were subject to in the hands of Erwin, the assignor. If this ground is a good cause to reverse the decree as to the Morgans, it is equally so as to the Bank of Mary *113 land, for which no complaint is made to the correctness oi the decree below.
This controversy has grown out of a distinction not often requiring attention in equity proceedings; that a discharge in avoidance, coupled with an admitted liability, if the answer be replied to, must be proved by the defendant. For instance, the bill charges defendant with a debt; the answer admits defendant was once indebted, but says he had paid. Here the admission is evidence for the complainant; but the avoidance, the allegation of payment, must be proved by defendant. This is the settled rule, and has been for more than a century, as will be seen by the cases cited in Hart vs. Ten Eyck, 2 John. Ch. R. 88-9.
There is a difference in the effect of the answer when read as evidence at law or in another cause in equity, or if it be not replied to; in these cases the answer is taken together, and the jury or Chancellor examine it as evidence, and may credit the whole or any part. 2 John. Ch. Ca. 90: 2 Poth. 156. It is a distinction between pleadings and evidence. A defendant cannot in pleading make evidence for himself and become his own witness, but when the answer is collaterally used to charge him in another suit, as evidence, it stands on the foot of a deposition, and the deponent on that of another witness; which case the whole evidence is competent, and must be taken together. Here the complainant introduces the proof at his election, and which right does 'not pertain to the defendant; as to him, his own answer in another cause is not competent.
If evidence is asked to be discovered, and the answer is directly responsive to the bill, so far as it is responsive the complainant is bound by it, and no proof to sustain the answer is required; but if any fact is insisted on by way of avoidance, and the answer is put in issue by a replication, the defendant is bound to prove the fact. The subject is astutely examined in Hart vs. Ten Eyck, (2 John. *114 Ch. C. 89,) which authority 'will supersede a reference to any other; it having beyond doubt extracted the true rule from the reported cases on this point of practice.
Elam alleges that Erwin had combined with the other defendants to cheat and defraud the complainant, and for that purpose had passed the notes to said defendants, in what proportions complainant did not know, but that he was informed and believed all the defendants set up some claim to said notes, and prays they may discover the facts.
To these allegations the Morgans answer, that Erwin assigned to them the two notes first due; but they were duly and fairly transferred for a full and valuable consideration before they became due, and without any knowledge or suspicion that any fraud had been committed by Erwin in obtaining them.
The answer was replied to, and no proof on either side was introduced as to this part of the bill or answer. On this state of the pleadings, the Chancellor decreed for the complainant, that the notes were holden by the Morgans, subject to the equities existing between Elam and Erwin.
If it lay on the Morgans to prove their answer, then the decree was right; if on Elam to disprove it, then it was on this point wrong. Elam charges the Morgans with the other defendants, that they had the notes passed to them to defraud complainant, but he does not know in what proportions, and prays them to answer.— That the notes had been passed, and in what proportions, is responsive to the bill. But that the Morgans were innocent purchasers of the notes, before due, for a fair, full, and valuable consideration, is an affirmative allegation in avoidance of the allegations in the bill, is, in fact, the plea of innocent purchaser, and relied on as a bar to relief against the Morgans, aside from any equity existing between Elam and Erwin.
I hold the rule to be well settled, “that what is con *115 fessed and admitted by the answer, need not be proved by the complainant; but that the defendant must make out by proof what is insisted on by way of avoidance.” The facts alleged that the two notes had been passed, is admitted. Elam need not prove it. But the plea of innocent purchaser relied on was clearly in avoidance, and it lay on the defendants to make it out by proof; not having done so, it must be disregarded. Gilbert on Evidence, 45. The plain sense of mankind, aside from authority, must fix the same rule. The notes, with probably a blank endorsement on them, were passed to the Morgans; and for what consideration they were passed, lay within the peculiar knowledge of the defendants, (Hoffman’s Practice, 79, 80, 418) and they only were capable of proving the facts.
On the face of the answer, could the court decree for the defendants? They do not say they received the notes in the due course of trade, for money or property advanced on their credit at the time they were received; or that they were received in discharge of a pre-existing debt in the course of trade. The reverse is fairly infer-able, first, from the fact that to secure their eventual payment, the mortgage was assigned at the same time the notes were; and second, because no demand from Pryor and Elam, the makers, or notice to Erwin of their non-payment, is alleged or pretended to have been made.. The general rule is, that the plea of innocent purchaser does not apply to transfers of personal property: negotiable paper is an exception on grounds of commercial policy; but this extraordinary protection is restricted to cases, “where credit is given to the paper, and the consideration bona fide paid on receiving it.” 5 John. Ch. C. 58. The answer does not state, and there is little doubt, the defendants could not in truth state that they purchased the notes in the due course of trade, that is, in good faith advancing money or property on their credit when transferred to them by Erwin.'
*116 When writs of error are prosecuted to reverse decrees below, they should be sustained unless manifestly erroneous; this decree is not so on the first and third grounds, above stated. But, on the second, it was impossible for the Morgans to say they stood on higher ground than Erwin, unless there is something in the suggestion that there did not appear enough in the bill to charge the Morgans, aside from their answer. The rule is, that no plea of innocent purchaser holds when personal property is pursued; and the purchaser’s title stands or falls with that of his vendor; as if Erwin had transferred to the Morgans property or notes not negotiable, or a title bond on Elam, the bill would, as in this case, have set forth the equity against Erwin and the assignment to the Morgans, and asked to have the obligation surrendered because of a failure of consideration; and any defence resting up.on an exception of law in favor of the defendants, or on any other cause, lay upon them.
It is a general rule in all cases that a defendant in equity, resisting relief in equity, on the foot of an innocent purchaser, must particularly and precisely deny all notice, though it benot charged in the bill. 3 P. Williams, 244, n: 1 John. Ch. C. 302: 2 John. Ch. C. 155: 3 John. Ch. C. 345: 2 Ves. jr. 457.
Another question has been suggested in this cause by one of my brother judges, which did not occur to the counsel who argued the cause below, or in this court; nor did it occur to myself, who decided the cause in the chancery court. It is supposed conclusive to dismiss the bill of Elam, not only as against Morgans, but also against Erwin. It is this: the mortgage of Eastin being registered, Elam had notice thereof by construction of law. Having notice, he purchased subject to the encumbrance, and it was his duty to pay the debt of Eastin, having in presumption of law bought the property for so much less. Truly, Elam was bound by the previous mortgage made by Eastin, because the legal title was in Crutcher, the *117 trustee. Constructive notice is one thing, actual knowledge another. As to the trustee, orutcher, Elam was bound to take notice of his title, because it was legal, and because it was registered. Yet Erwin might conceal the fact from Elam, and sell him property representing he had the unencumbered fee, when in fact it was mortgaged for more than it was worth.
Elam alleges he purchased in extravagant times, for the extravagant price of thirty thousand dollars, which was greatly more than the property was worth, Erwin representing, that he had the unencumbered fee, when he knew the fact to be untrue, and that he committed a fraud on Elam. The bill was taken for confessed against Erwin. The decree sought to be reversed, finds the facts alleged in the bill; and also that Eastin’s mortgage had been foreclosed, the property sold, and Elam evicted. That he promised to pay to Erwin, not only a full price, but greatly more than the property was v/orth, appears clearly. Truly, he had a covenant of warranty from Erwin; but was this a bar to relief in equity under the circumstances? Whether he could have enjoined the collection of the purchase money, and asked to be relieved from the contract before any step was taken to evict him at law or in equity by force of Eastin’s mortgage, is doubtful; but he alleged fraud in fact, which is not denied. The weight of authority is in favor of affording relief in such a case before the possession is disturbed. 18 Viner’s Ab. 113: Note 132 to Co. Litt. sec. 384 a: Cooper’s Eq. Rep. 308: 1 Ves. sr. 126, and Sup. 81: 2 John. Ch. C. 522.
This is the rule where there is fraud in fact alleged and proved, and applies to cases where there are or are not covenants for title. When there is no covenant for title and no fraud or mistake, the vendee is without remedy. 2 John. Ch. C. 523, and authorities cited: Meek vs. Randolph, in this court, Mar. and Yerg. Rep. 58.
So, if there is a covenant for title and the possession of the vendee undisturbed by suit, the better opinion is, *118 that there is no remedy to enjoin the collection of the unpaid purchase money: yet the authorities on this head of equity jurisdiction are by no means uniform; slight circumstances have been seized upon to afford relief. 2 John. Ch. C. 523: Bumpus vs. Platner, 1 John. Ch. C. 213, 217: 1 Ves. 126: Belt’s Sup. 81.
But in a case where there is a warranty of title, and the vendee has been evicted at law or in equity by an ejectment bill to foreclose a mortgage, as in this instance, before the purchase money has been paid, the vendee can call upon a court of equity to enjoin the vendor from enforcing the payment of the purchase money. Than this nothing is better settled, upon two grounds: 1. Because of a failure of consideration, and, 2, To prevent circuity of action. 2 John. Ch. C. 523.
To sustain the plea of innocent purchaser in this instance, upon the mere plea, without proof that the Morgans purchased the notes either before due for value, or in the due course of trade, that is, that they parted with their money or property on the faith of the notes, would be giving an effect to the plea of a most dangerous tendency. The plea is a flat bar, and every affirmative fact set forth in it must be proved by him who relies on it. Had the Morgans produced the notes and assignments in due form, with dates, and proved the endorsements by Erwin, and the delivery, the case would have presented a very different aspect; but they proved nothing, and seek to reverse the decree upon the naked assertion in the most general terms, without setting forth when they purchased or what they paid. To sustain their title on such grounds, would violate all the standard authorities that I am familiar with. I therefore think the decree must be affirmed.
Decree affirmed.